IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSEPH PERCIAVALLE, III,<br><br>*Plaintiff,*<br><br>v.<br><br>CITY OF ALIQUIPPA, *et al*,<br><br>*Defendants.* | Civil Action No. 2:20-cv-474<br><br>Hon. William S. Stickman IV |

## MEMORANDUM OPINION

WILLIAM S. STICKMAN IV, United States District Judge.

Plaintiff, Joseph Perciavalle III ("Perciavalle"), a former City of Aliquippa police officer, filed this action on April 2, 2020. (ECF No. 1). He then filed an Amended Complaint on July 10, 2020 (ECF No. 27), which was followed by a Second Amended Complaint on August 10, 2020 (ECF No. 44). On September 30, 2020, he filed a Third Amended Complaint. (ECF No. 63). The Defendants that remained in the case, the City of Aliquippa and Dwan Walker ("Walker"), filed a Motion to Dismiss Perciavalle's Third Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on October 14, 2020, along with a supporting brief. (ECF Nos. 70 and 71). The matter was reassigned to the Court on November 25, 2020. By Memorandum Opinion and Order issued January 27, 2021, the Court granted Defendants' motion to dismiss. Counts I, II and IV against Defendant Walker in his official capacity were dismissed with prejudice. Counts I, II, IV, VI and VII against Walker in his individual capacity were dismissed without prejudice. Counts I, II, III, IV and V against the City of Aliquippa were dismissed without prejudice. The Court permitted Perciavalle to file a Fourth Amended Complaint. (ECF Nos. 84 and 85).

1

Perciavalle filed a Fourth Amended Complaint that eliminated Counts I through III as to Walker. Counts I through IV, which are now only lodged against the City of Aliquippa, allege various civil rights violations under the First and Fourteenth Amendments to the United States Constitution. Count V, which is also against the City of Aliquippa, alleges a violation of the Pennsylvania Whistleblower Act. Count VI, which is against Walker, alleges a Pennsylvania state law claim of intentional infliction of emotional distress. Count VII, which is against Walker, alleges a Pennsylvania state law claim of slander *per se*. (ECF No. 90). Defendants once again filed a Motion to Dismiss Plaintiff's Fourth Amended Complaint. (ECF No. 91). Briefing is now complete. For the following reasons, the Court will grant in part and deny in part Defendants' motion.

### I. STANDARD OF REVIEW

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). A plaintiff must allege sufficient facts that, if accepted as true, state a claim for relief that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court must accept all well-pleaded factual allegations as true and view them in the light most favorable to a plaintiff. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009); *see also DiCarlo v. St. Mary Hosp.*, 530 F.3d 255, 262-63 (3d Cir. 2008). Although this Court must accept the allegations in the Complaint as true, it is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (citations omitted).

The "plausibility" standard required for a complaint to survive a motion to dismiss is not akin to a "probability" requirement but asks for more than sheer "possibility." *Iqbal*, 556 U.S. at 678 (*citing Twombly*, 550 U.S. at 556). In other words, the complaint's factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations are true even if doubtful in fact. *Twombly*, 550 U.S. at 555. Facial plausibility is present when a plaintiff pleads factual content that allows the court to draw the reasonable inference that a defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. Even if the complaint's well-pleaded facts lead to a plausible inference, that inference alone will not entitle a plaintiff to relief. *Id.* at 682. The complaint must support the inference with facts to plausibly justify that inferential leap. *Id.*

## II.   FACTUAL BACKGROUND

In 2011, Perciavalle was hired by the City of Aliquippa as a police officer until his termination on or about September 30, 2020. In 2014, he was promoted to Assistant Chief. (ECF No. 90, ¶¶ 8-9). In 2015, he began making "complaints" to Walker and "various other city council members about wrongdoing within Defendant Aliquippa's police department, including, but not limited to, wrongdoing committed by Chief Couch." (ECF No. 90, ¶ 10). Perciavalle also made similar "complaints" to other law enforcement agencies. The "complaints" related to "corruption" with the City of Aliquippa police department, including the "mismanagement of departmental funds and/or additional illegalities committed by various individuals, including Chief Couch." (ECF No. 90, ¶¶ 11-14). In March of 2016, Perciavalle made a report of wrongdoing by Chief Couch (i.e., "mismanagement of departmental funds/ and or additional illegalities") to the Beaver County District Attorney as well as "to various individuals and/or agencies." (ECF No. 90, ¶¶ 15-17). In the following months, Perciavalle had discussions with

District Attorney Lozier "relating to the wrongdoing taking place" within the police department and "various ongoing investigations." (ECF No. 90, ¶¶ 18-19).

On June 6, 2018, Chief Couch was removed from his position and placed on administrative leave. Perciavalle was appointed Acting Chief. Two days later, Perciavalle was charged with various criminal offenses and removed from his position and placed on paid administrative leave. On July 10, 2018, Perciavalle was charged with an additional criminal offense. The felony charges against Perciavalle – i.e., distribution of explicit sex materials to a minor and unlawful contact with a minor - were dismissed at his December 4, 2018 preliminary hearing. On July 25, 2019, the felony charge of intercepting communications against him was *nolle prossed*. On March 13, 2019, Perciavalle's remaining criminal charge – corruption of minors – was *nolle prossed*. (ECF No. 90, ¶¶ 20-26).

In March of 2020, Perciavalle, who remained on administrative leave, made "yet another good faith report of ongoing wrongdoing within Defendant Aliquippa's police department" to members of the City of Aliquippa's council and "various individuals and/or agencies." (ECF No. 90, ¶¶ 27-28). These "complaints" related to "corruption" within the City of Aliquippa police department, including the "mismanagement of departmental funds and/or additional illegalities committed by various individuals, including Chief Couch." (ECF No. 90, ¶ 29). Perciavalle "believes, and therefore avers, that a member and/or members of Defendant Aliquippa's council reported [his] complaint to Defendant Walker." (ECF No. 90, ¶ 30). Walker allegedly responded to these individuals, "[n]o, you're chasing [Perciavalle's] waterfalls again." (ECF No. 90, ¶ 30).

Perciavalle was not permitted to return to his position as a police officer. The City of Aliquippa's reason for not doing so was "[Perciavalle's] dissemination of allegedly inappropriate

4

materials in the workplace, as well as allegedly inappropriate interactions with coworkers." The inappropriate materials consisted of lewd text messages, crude drawings, and off-color memos. The inappropriate interactions consisted of conversations with other officers, one of which involved Perciavalle calling another officer rude names. Perciavalle alleges that five other named officers "engaged in the same or substantially similar conduct," including disseminating "allegedly inappropriate materials in the workplace in the form of lewd text messages, crude drawings and off-color memes," as well as "inappropriate interactions with coworkers by calling one another rude names," and that they were not disciplined. (ECF No. 90, ¶¶ 31-38).

Since he filed this action, Perciavalle alleges that "Walker has indicated to various members of [Perciavalle's] community, including members of Defendant Aliquippa's council, that he would not return [Perciavalle] to his position as a law enforcement officer [. . .] as a direct result of his pending lawsuit." Perciavalle "believes, and therefore avers," that Walker, "exerted his power and influence as mayor and de facto head of Defendant Aliquippa's police department to prevent [Perciavalle's] return to his position as law enforcement officer." He further alleges that Walker acted as a decision-maker for the City of Aliquippa "with final authority to discipline municipal employees in his capacity as mayor," and Walker's actions were "taken in retaliation for [Perciavalle's] good faith reports of wrongdoing within Defendant Aliquippa's police department." (ECF No. 90, ¶¶ 41-44). In June of 2020, Walker "indicated to various members of [Perciavalle's] community that [Perciavalle] was a 'pervert' and that [Perciavalle] had 'slipped through the cracks' when the criminal charges against him were *nolle prossed.*" (ECF No. 90, ¶¶ 41-46). Then, on or about September 30, 3020, Perciavalle was terminated as a law enforcement officer by the City of Aliquippa for "inappropriate materials in the workplace," and "inappropriate interactions with coworkers." (ECF No. 90, ¶¶ 47-48).

### III.  ANALYSIS

#### A. *The 42 U.S.C. § 1983 claims – Counts I through III can proceed, but Count IV will be dismissed with prejudice.*

42 U.S.C. § 1983 provides a cause of action against any person who, acting under the color of state law, deprives another of his or her federal rights, and, under certain circumstances, the municipal employer and/or supervisor of such a person. To obtain relief under § 1983, a plaintiff must make a two-prong showing: (1) that he suffered a violation of a right secured by the Constitution and laws of the United States; and, (2) that the alleged deprivation was committed by a person acting under the color of state law. *See Karns v. Shanahan*, 879 F.3d 504, 520 (3d Cir. 2018) (citations omitted). Like all other federal civil court complaints, those that invoke § 1983 must contain *factual* allegations, not mere conclusions, constituting a plausible, and not merely speculative or possible, claim for relief. Fed. R. Civ. P. 8 does not unlock the doors of discovery for a plaintiff armed with nothing more than mere conclusions. Whether factual allegations constitute a plausible constitutional claim is context-specific, dependent upon the particular constitutional provision at issue and the nature of a plaintiff's theory of liability. *Iqbal*, 556 U.S. at 676-79.

A municipal entity, such as the City of Aliquippa, cannot be held liable pursuant to § 1983 under the theory of *respondeat superior*. *Monell v. Dep't of Social Services of New York*, 436 U.S. 658, 691 (1978). "[I]t is when execution of a [municipality's] policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694. Municipal entities may only be held liable under § 1983 on (1) an express municipal policy, such as an ordinance, regulation, or policy statement, *see Id.*, (2) a "widespread practice, that although not authorized by written law or express municipal policy, is 'so permanent and

6

well settled as to constitute a custom or usage' with the force of law," *see City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-68 (1970)), or (3) the decision of a person with "final policymaking authority." *See Praprotnik*, 485 U.S. at 123; *see also Pembaur v. City of Cincinnati*, 475 U.S. 469, 481-83 (1986). A municipality may be held liable under § 1983 only when the enforcement of the municipal policy or practice was the "moving force" behind the violation of a plaintiff's federal protected right. *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 400 (1997); *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388-89 (1989).

### 1. *Counts I, II and III can proceed.*

Count I alleges First Amendment retaliation based upon Perciavalle's reports of waste or wrongdoing by the police department, and Count II alleges First Amendment retaliation based upon his filing of the instant lawsuit. (ECF No. 90, ¶¶ 55-66). Count III is a claim of municipal liability. (ECF No. 90, ¶ 67-73). The Court finds that Perciavalle's factual allegations state plausible § 1983 claims against the City of Aliquippa.

The First Amendment to the United States Constitution safeguards the right to free speech, and the provisions of the First Amendment bind state actors by way of incorporation through the Due Process Clause of the Fourteenth Amendment. *See Locke v. Davey*, 540 U.S. 712, 718 (2004). Section 1983 cases involving the First Amendment typically arise in situations where government officials either intend the result of their challenged conduct – the plaintiff's denial or lack of opportunity to write or receive information – or knowingly punish a plaintiff for the exercise of First Amendment rights. Perciavalle is proceeding under the later theory.

The basic principles of First Amendment retaliation are well established. "Official reprisal for protected speech offends the Constitution [because] it threatens to inhibit exercise of

7

the protected right." *Mirabella v. Villard*, 853 F.3d 641, 649 (3d Cir. 2017) (quoting *Hartman v. Moore*, 547 U.S. 250, 256 (2006)) (alteration in original) (internal quotations omitted). "[T]o plead a retaliation claim under the First Amendment, a plaintiff must allege: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Thomas v. Indep. Twp.*, 463 F.3d 285, 296 (3d Cir. 2006) (citing *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003)), *abrogated on other grounds by Iqbal*. "The key question in determining whether a cognizable First Amendment claim has been stated is whether the alleged retaliatory conduct was sufficient to deter a person of ordinary firmness from exercising his First Amendment rights." *Id.* (citing *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006) (internal quotation marks omitted)); *see also Crawford-El v. Britton*, 523 U.S. 574, 588 n. 10 (1998) ("The reason why such retaliation offends the Constitution is that it threatens to inhibit exercise of [a constitutionally] protected right."). The third element, "a causal link," requires "but-for" causation. *Mirabella*, 853 F.3d at 651. "In order to establish the required causal connection, a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Rink v. Ne. Educ. Intermediate Unit 19*, 717 F. App'x 126, 133 (3d Cir. 2017) (citation omitted).

To show that he engaged in First Amendment protected speech or conduct, Perciavalle had to plead that he spoke on a matter of public concern in his capacity as a citizen, and not as an employee. *Green v. Philadelphia Housing Auth.*, 105 F.3d 882, 885 (3d Cir. 1997). *See also Hill v. Borough of Kutztown*, 455 F.3d 225, 241-42 (3d Cir. 2006) ("[a] public employee's statement is protected activity when (1) in making it, the employee spoke as a citizen, (2) the

statement involved a matter of public concern, and (3) the government employer did not have 'an adequate justification for treating the employee differently from any other member of the general public.'") (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006)). This is because, in the absence of protected speech or conduct, a public employee may be discharged even if the action is unfair, or the reasons "are alleged to be mistaken or unreasonable." *Connick v. Myers*, 461 U.S. 138, 147 (1983) (citations omitted).

"Speech implicates a matter of public concern if the content, form, and context establish that the speech involves a matter of political, social, or other concern to the community." *Miller v. Clinton County*, 544 F.3d 542, 548 (3d Cir. 2008). The "public concern" inquiry required under *Connick* presents a question of law for the Court to decide. *Connick*, 461 U.S. at 148, n. 7. *See also Baldassare v. New Jersey*, 250 F.3d 188, 194-95 (3d Cir. 2001) (a district court determines as a matter of law whether activity is protected by the First Amendment). Because district courts are not to "make a superficial characterization of the speech or activity taken as a whole," they must conduct "a particularized examination of each activity for which the protection of the First Amendment is claimed" to determine whether it involves a matter of public concern, *Johnson v. Lincoln Univ. of Commonwealth Sys. of Higher Educ.*, 776 F.2d 443, 451 (3d Cir. 1985), while taking care not to "'cherry pick' something that may impact the public while ignoring [its] manner and context," *Munroe v. Cent. Bukcs Sch. Dist.*, 805 F.3d 454, 467 (3d Cir. 2015) (citation omitted).

The facts pled in support of Perciavalle's claims against the City of Aliquippa remain scant, but there are enough to show that constitutionally protected speech or conduct is at issue, at least at the pleading stage. Perciavalle's First Amendment retaliation claim at Count I is based upon "reports" and "complaints" of "corruption," "mismanagement of departmental funds,"

9

and/or "additional illegalities," by the Chief Couch and various individuals in the City of Aliquippa's police department. It is plausible that Perciavalle was speaking on a matter of public concern outside of his ordinary job duties.

As to Count II, Perciavalle alleges that he "engaged in constitutionally protected activity when he filed a lawsuit alleging numerous claims of unlawful behavior on the parts of the Defendants." (ECF No. 90, ¶ 64). The filing of this lawsuit was certainly not within Perciavalle's ordinary job responsibilities. Furthermore, court appearances are generally matters of public concern in that they implicate, particularly in criminal matters, the public's integrity in the truth seeking process and administration of justice. It is a plausible inference at this stage that this lawsuit involves constitutionally protected activity and a matter of public concern.

A fair reading of the Fourth Amended Complaint yields generalized facts outlining constitutionally protected speech or conduct. The Court holds that what is pled is just enough for Counts I and II to proceed to discovery. Furthermore, it will permit the *Monell* claim, advanced in Count III, to proceed as well. Perciavalle is ostensibly pleading that Walker, as mayor (and *de facto* head of the City of Aliquippa's police department), acted as a decision maker with final authority when he refused to return Perciavalle to his position as a law enforcement officer and it was in retaliation for Perciavalle's filing complaints of wrongdoing with the police department and filing this lawsuit. It is certainly possible to find the existence of a municipal policy in "the isolated decision of an executive municipal policymaker." *City of St. Louis*, 485 U.S. at 139. Based on the facts alleged, it is plausible to infer that Walker's actions give rise to a claim of municipal liability.

The motion to dismiss will be denied as to Counts I, II, and III.

### *2. Count IV will be dismissed with prejudice.*

The equal protection clause of the Fourteenth Amendment prohibits the discriminatory enforcement of facially valid laws. *See Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir. 2005). Perciavalle's equal protection claim at Count IV against the City of Aliquippa is brought under the selective enforcement theory of liability. To establish that his equal protection rights were violated by selective enforcement of a law or policy, Perciavalle must demonstrate: "(1) that he was treated differently from other similarly situated individuals; and (2) that this selective treatment was based on an unjustifiable standard, such as race, religion, some other arbitrary factor or to prevent the exercise of a fundamental right." *Karns*, 879 F.3d at 520–21; *see also PG Pub. Co. v. Aichele*, 705 F.3d 91, 115 (3d Cir. 2013). Thus, to maintain a claim of this type, Perciavalle had to show in his factual averments that the administration of laws has not only "resulted in unequal application to those who are entitled to be treated alike, but also that there is an element of intentional or purposeful discrimination." *PG Pub. Co.*, 705 F.3d at 115 (internal citations and quotations omitted); *see also Jewish Home of E. Pa. v. Ctrs. for Medicare and Medicaid Servs.*, 693 F.3d 359, 363 (3d Cir. 2012) ("[T]o maintain an equal protection claim of this sort, [plaintiff] must provide evidence of discriminatory purpose, not mere unequal treatment or adverse effect."). "A federal constitutional violation does not exist merely because of the 'exercise of some selectivity in enforcement.'" *Karns*, 879 F.3d at 521 (quoting *Oyler v. Boles*, 368 U.S 448, 456 (1962)). Rather, a claim for "intentional discrimination requires evidence of a malicious bad faith intent to injure." *Greco v. Senchak*, 25 F. Supp. 3d 512, 518 (M.D. Pa. 2014).

With regard to the first element, at the motion to dismiss stage, Perciavalle "must allege sufficient facts to make plausible the existence of [ ] similarly situated parties" that received

11

disparate treatment, by including "specific factual allegations as to the allegedly similarly situated parties." *Perano v. Twp. of Tilden*, 423 F. App'x 234, 238 (3d Cir. 2011); *see also Yagla v. Simon*, No. 14-181, 2015 WL 1326341, at *15 (W.D. Pa. Mar. 24, 2015).[1] Perciavalle does no such thing. Instead, he makes a very general allegation of disparate treatment. He alleges that, "other similarly situated individuals employed as law enforcement officers by Defendant Aliquippa who engaged in the same or substantially similar conduct as Plaintiff were not disciplined by Defendant Aliquippa." (ECF No. 90, ¶ 78). All he offers as a factual basis is that five other named officers "engaged in the same or substantially similar conduct," including disseminating "allegedly inappropriate materials in the workplace in the form of lewd text messages, crude drawings and off-color memes," as well as "inappropriate interactions with coworkers by calling one another rude names," and that they were not disciplined. (ECF No. 90, ¶¶ 31-38). The Fourth Amended Complaint lacks any specific allegations as to each of the named officers. It is not clear what specific action each officer took, how it was similar to Perciavalle's actions (which are also unclear from the factual averments), and exactly how each officer was disciplined in light of their own disciplinary record. None of the facts alleged make plausible the existence of similarly situated officers and that Perciavalle was treated differently than them.

As to the second factor, even if Perciavalle could demonstrate that he was similarly situated to the five named officers, there are absolutely no facts alleged in the Fourth Amended Complaint that would support an inference that his race, religion, some other arbitrary factor motivated the discipline of him and termination of his employment. Subjective beliefs,

---

[1] Persons are "similarly situated" for equal protection purposes when "they are alike in all relevant aspects." *Suber v. Wright*, 574 F. App'x 207, 211 (3d Cir. 2014) (internal citations and quotations omitted).

unsupported by factual allegations, cannot give rise to an inference of discrimination. *See Rodriguez v. Nat'l R.R. Passenger Corp.*, 532 F. App'x 152, 153 (3d Cir. 2013). That is all Perciavalle has pled, and it is insufficient to satisfy his pleading requirement.

In sum, Perciavalle has failed to allege facts that plausibly establish the existence of similarly situated parties who were treated differently from him on the basis of an arbitrary or unjustifiable standard. Perciavalle's ambiguously asserted selective enforcement averments fail to state a claim upon which relief can be granted.

Additionally, and more importantly, Count IV must be dismissed because Perciavalle's factual allegations fall woefully short of containing any of the necessary elements of holding the City of Aliquippa liable under a *Monell* theory. As previously discussed herein, "[p]laintiffs who seek to impose liability on local governments under § 1983 must prove that 'action pursuant to official municipal policy' caused their injury." *Connick*, 563 U.S. at 60 (quoting *Monell*, 436 U.S. at 691). Perciavalle has completely failed to pled a cognizable *Monell* theory of liability as to his selective enforcement claim. Not only has he failed to allege a constitutional violation, but he has not set forth any factual allegations that the City of Aliquippa or Walker acted pursuant to a municipal policy, practice, or procedure, and, for the reasons set forth above, he has not sufficiently alleged that Walker had final policymaking authority. Nothing is pled that the City of Aliquippa had knowledge of Walker's actions. Predicating liability solely on the actions of Walker is nothing more than a thinly veiled application of vicarious liability pursuant to the *respondeat superior* doctrine. Liability against the City of Aliquippa cannot proceed on this basis.

The motion to dismiss will be granted as to Count IV, and it will be dismissed with prejudice for failure to state a claim. Any attempt by Perciavalle to amend his Complaint, after

13

already being given four opportunities to do so, would be futile. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) (a court may decide to deny leave to amend for reasons such as undue delay, bad faith, dilatory motive, prejudice, and futility); *see also* 3 James Wm. Moore et al., Moore's Federal Practice ¶ 15.15 (3d ed. 2021) ("An amendment is futile if it merely restates the same facts as the original complaint in different terms, reasserts a claim on which the court previously ruled, fails to state a legal theory, or could not withstand a motion to dismiss.").

### B. *The Pennsylvania tort claims*

#### 1. *Count V – violation of the Pennsylvania Whistleblower Act against City of Aliquippa – can proceed.*

The Pennsylvania Whistleblower Act ("Whistleblower Act") provides that "[n]o employer may discharge, threaten or otherwise discriminate or retaliate against an employee ... because the employee ... makes a good faith report or is about to report, verbally or in writing, to the employer or appropriate authority an instance of wrongdoing or waste." 43 P.S. § 1423(a). "To assert a *prima facie* case under the Pennsylvania Whistleblower Law, a plaintiff must plead that, prior to the alleged acts of retaliation, [s]he had made a good faith report of wrongdoing to appropriate authorities." *Kimes v. Univ. of Scranton*, 126 F. Supp. 3d 477, 505 (M.D. Pa. 2015) (quoting *O'Rourke v. Commonwealth*, 778 A.2d 1194, 1200 (Pa. 2001) (internal quotations omitted)). Recovery under the Act requires evidence that a plaintiff: (1) reported an instance of wrongdoing or waste to an appropriate authority; and (2) there is a causal connection between the report and the alleged retaliation. 43 P.S. § 1424(b). If such a showing is made, the burden shifts to the defendant to show that the action it took occurred for legitimate reasons. *Johnson v. Res. for Human Dev., Inc.*, 789 F. Supp. 2d 595, 601 (E.D. Pa. 2011). The burden then shifts back to the plaintiff to show the proffered reason is, in fact, pretextual.

14

The City of Aliquippa contends that Perciavalle's claim against it at Count V is time-barred. While courts do not typically dismiss claims as time-barred on a motion to dismiss, "a court may ... dismiss a claim under 12(b)(6) where the bar is 'apparent on the face of the complaint.'" *Metso Paper USA, Inc. v. Bostik, Inc.*, No. 3:08–CV–772, 2011 WL 2670320, at *3 (M.D. Pa. July 8, 2011) (quoting *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002)).

The Whistleblower Act provides:

> A person who alleges a violation of this act may bring a civil action in a court of competent jurisdiction for appropriate injunctive relief or damages, or both, within 180 days after the occurrence of the alleged violation.

43 P.S. § 1424(a). "[D]espite the use of the permissive 'may,' the Whistleblower Law's '180–day time limit is mandatory, and courts have no discretion to extend it.'" *Campion v. Northeast Utilities*, 598 F. Supp. 2d 638, 645 (M.D. Pa. 2009) (quoting *O'Rourke v. Pennsylvania Dep't of Corr.*, 730 A.2d 1039, 1042 (Pa. Commw. 1999)).

Here, Perciavalle's original Complaint was filed on April 2, 2020. (ECF No. 1). He was placed on paid administrative leave on or about June 2018 and then terminated on September 30, 2020, and these employment events, according to Perciavalle, were the result of his "complaints" of wrongdoing about the City of Aliquippa's police department. (ECF No. 95, p. 10). The "complaints" he cites to occurred in 2015, March of 2016, and March of 2020. (ECF No. 90, ¶¶ 10-11, 15, 27). There is no question that the March 2020 "complaint" occurred within the 180 day limitation period. Thus, at this particular juncture, the Court finds that Count V is not time-barred, and it adequately sets forth sufficient facts to permit the claim to proceed to discovery.

The Motion to Dismiss will be denied as to Count V.

### 2. *Count VI – Intentional Infliction of Emotional Distress against Walker – will be dismissed.*

To state a claim for Intentional Infliction of Emotional Distress ("IIED") under Pennsylvania law, a plaintiff must make a "showing of 'intentional outrageous or extreme conduct by the defendant, which causes severe emotional distress to the plaintiff.'" *Williams v. Fedarko*, 807 F. App'x 177, 181 (3d Cir. 2020) (quoting *Swisher v. Pitz*, 868 A.2d 1228, 1230 (Pa. Super. 2005)). Liability on an intentional infliction of emotional distress claim "has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Field v. Phila. Elec. Co.*, 565 A.2d 1170, 1184 (Pa. Super. 1989). In addition, "'a plaintiff must suffer some type of resulting physical harm due to the defendant's outrageous conduct.'" *Reedy v. Evanson*, 615 F.3d 197, 232 (3d Cir. 2010) (quoting *Swisher*, 868 A.2d at 1230)). Thus, conduct rises to the level required to constitute IIED in only very limited circumstances. *See, e.g. Banyas v. Lower Bucks Hosp.*, 437 A.2d 1236 (Pa. Super. 1981) (finding IIED where defendants intentionally fabricated records to suggest that plaintiff had killed a third party which led to plaintiff being indicted for homicide); *Chuy v. Phila. Eagles Football Club*, 595 F.2d 1265 (3d Cir. 1979) (finding IIED where defendant's team physician released to press information that plaintiff was suffering from fatal disease, when physician knew such information was false). Liability under this cause of action is "reserved by the courts for only the most clearly desperate and ultra extreme conduct." *Hoy v. Angelone*, 720 A.2d 745, 754 (Pa. 1998).

Perciavalle's IIED claim against Walker fails on multiple grounds. First, Perciavalle has failed to sufficiently allege that Walker engaged in "outrageous or extreme conduct" necessary to sustain an IIED claim. The Court finds that Walker's alleged statements to various members of

the community that Perciavalle was a "pervert" and he had "slipped through the cracks" when the criminal charges against him, including a charge of corruption of minors, were *nolle prossed*, is simply not type of extreme conduct to which liability can attach. Second, Perciavalle failed to set forth any facts establishing that Walker *intended* to inflict emotional distress on him by making such statements. Third, Perciavalle failed to allege the requisite physical injury or manifestation that Pennsylvania law holds is necessary to state such a claim. His allegations of "emotional distress" are insufficient to establish physical harm.

The Motion to Dismiss Count VI will be granted and Perciavalle's IIED claim against Walker will be dismissed with prejudice.

### 3. *Count VII – Slander Per Se against Defendant Walker – can proceed.*

Defamation includes both libel and slander in Pennsylvania. *Pondexter v. Allegheny County Hous. Auth.*, No. 11-CV-857, 2012 WL 3611225, at *10 (W.D. Pa. Aug. 21, 2012). Libel is written defamation, while slander is oral defamation. *Id.* Pursuant to 42 P.S. § 8343(a), a plaintiff asserting a claim for defamation has the *prima facie* burden of proving: (1) the defamatory character of the communication; (2) its publication by the defendant; (3) its application to the plaintiff; (4) the understanding by the recipient of its defamatory meaning; (5) the understanding by the recipient of it as intended to be applied to the plaintiff; (6) special harm resulting to the plaintiff from its publication; and (7) abuse of a conditionally privileged occasion. 42 P.S. § 8343(a)(1)-(7). Under Pennsylvania defamation law, it is for the Court to determine whether the statement at issue is capable of a defamatory meaning. *Keim v. County of Bucks*, 275 F. Supp. 2d 628, 636 (E.D. Pa. 2003). A statement is defamatory if it tends so to harm the reputation of another as to lower him or her in the estimation of the community or to deter third persons from associating or dealing with him or her. *Id.* (citation omitted).

Pennsylvania recognizes an exception to the requirement of showing special harm where the words spoken constitute slander *per se*. *Rossi v. Schlarbaum*, 600 F. Supp. 2d 650, 663 (E.D. Pa. 2009). Slander *per se* encompasses statements that impute to the person (1) a criminal offense, (2) a loathsome disease, (3) a matter incompatible with his business, trade, profession, or office, or (4) serious sexual misconduct. *Id.* (citing Restatement (Second) of Torts § 570 (1977)).

Perciavalle has adequately pled a slander *per se* claim against Walker. Taking all allegations in the Fourth Amended Complaint as true and in their entirety, Walker's statements to various members of the community that Perciavalle was a "pervert" and that he had "slipped through the cracks" when the criminal charges against him, including a charge of corruption of minors, were *nolle prossed*, could be considered defamatory. The statements impute criminal conduct to Perciavalle and could constitute slander *per se*. In addition, Perciavalle has alleged that he suffered personal humiliation and damage to his reputation.

The Motion to Dismiss Count VII will be denied.

## IV.   CONCLUSION

Defendants' Motion to Dismiss will be granted in part and denied in part for the foregoing reasons of law and fact. An Order of Court will follow.

BY THE COURT:

_____
WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

May 25, 2021
Dated